### Walter J. Becker, Appellee, v. Sievert Hollesen, Appellant.

### Gen. No. 21,875.   (Not to be reported in full.)

Appeal from the Municipal Court of Chicago; the Hon. CHARLES N. GOODNOW, Judge, presiding. Heard in this court at the October term, 1915. Reversed and judgment here. Opinion filed March 7, 1916. Rehearing denied March 20, 1916.

### Statement of the Case.

Action by Walter J. Becker, plaintiff, against Sievert Hollesen, defendant, for commission of $1,375 for procuring purchasers for defendant's real estate. From a judgment in favor of plaintiff for the amount claimed, defendant appeals.

Plaintiff alleged that in January, 1913, defendant promised to pay him two and one-half per cent. commission if plaintiff would procure purchasers for certain real estate belonging to defendant, at a price of $55,000·; that about April 14, 1913, plaintiff did so, but defendant refused to abide by his promise.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The evidence tended to show that in April, 1913, defendant owned a tract of land situated in Evanston, Illinois, north of Devon avenue and east of Clark street, which was designated as "the ball park," and another piece of land near by, which was called "the Schreiber avenue strip." The ball park was used as such, with grand stand, ticket offices and appurtenances, under a lease for a term of eight years beginning April 1, 1909. A portion of the Schreiber avenue strip was also under lease for a term of three years beginning October 1, 1911, with privilege to the lessee of renewal for an additional period of three years. In the latter part of 1912, or perhaps in January, 1913, plaintiff, a real estate broker, asked defendant what price was wanted for the ball park and defendant gave him a price of $45,000. Afterwards, in April, 1913, plaintiff told defendant that he thought he had a purchaser for the ball park provided the Schreiber avenue strip could also be purchased, and upon inquiring as to the price of that was told that it could be bought for $10,000. Later on the plaintiff and defendant met Henry C. Bartling and Selma Sundsten, prospective purchasers procured by plaintiff, and a written option agreement was drawn up and $1,000 deposited to be held in escrow pending the exercise of the option. This option gave the prospective purchasers the privilege of purchasing on or before October 15, 1913, both the ball park and the Schreiber avenue strip at a price of $55,000, and provided that the option contract should be void if the "leases on the above premises are not removed," and that in this event the escrow money should be returned to the prospective purchasers. After the execution of this agreement attempts were made in divers ways to cancel the lease on the ball park, but without success. By June 25, 1913, all the parties apparently being of the opinion that there was no prospect of canceling or forfeiting the lease, it was

agreed by them that the option agreement should be canceled and the money refunded, and this was accordingly done.

Defendant continued in his efforts to secure the cancellation of the lease on the ball park, and in August terms were agreed on between him and the ball club which involved a remittance to the club of $1,000 of rent in consideration of which the lease was canceled by mutual agreement. During the following month plaintiff went to defendant and said he had heard that the lease had been canceled, was informed that this was true, and plaintiff said that he would see his parties again. Afterwards he reported to defendant that his parties wanted time to get estimates on paving, sewers and other improvements, as it was contemplated to subdivide the ball park. Defendant then stated that he would not sell the Schreiber avenue strip at all. Some weeks later plaintiff, with Bartling and Sundsten, called upon defendant and was told by him that he would not sell the Schreiber avenue strip, and that his price on the ball park was $50,000. This the parties refused to pay, and no further negotiations between them were had. Plaintiff claims two and one-half per cent. commission on $55,000, the price originally given him by defendant for all of the said real estate.

J. F. CRAHEN, for appellant.

GUY VAN SCHAICK, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

### Abstract of the Decision.

1. BROKERS, § 36*—*when owner of real estate not liable for commissions to agent procuring prospective customer.* As between a real estate broker and an owner of property for whom such real

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

estate broker procured customers, the owner of the property was not liable for commissions where the owner verbally put a certain price on land and at such time the broker brought customers to the owner who signed an option agreement which was canceled and where about nine months later the owner raised the price of such land after it had cost the owner a considerable sum to secure cancellation of a lease on the premises, and where there may have been other reasons for raising the price, even though the broker procured the same prospective purchasers as previously, who were willing to pay the sum first asked.

2. VENDOR AND PURCHASER, § 85*—*what constitutes cancellation of option contract for purchase of land.* A cancellation of an option contract for the purchase of land by parties thereto, *held* to be a cancellation in fact and in law.

3. BROKERS, § 41*—*when owner not bound by statement to broker as to price of real estate.* An owner of real estate is not bound for an indefinite period by his verbal reply to an inquiry as to the price of such real estate made to a broker who agrees to furnish a prospective purchaser.

4. BROKERS, § 36*—*when owner of real estate not liable to broker for commissions for procuring prospective customer.* Where real estate broker procured prospective customers who were not willing to buy property under existing conditions but who would buy same if freed from a lease thereon, such broker is not entitled to a commission.